ROBERTSON, Justice.
Defendant, James L. Willard, appeals from an order of the Circuit Court of Union County, Mississippi, overruling his motion to set aside default judgments entered against him and in favor of O. T. Hill and B. N. Knox, Jr., in one case, and T. J. Hill in the other case. In its order of January 30, 1974, the court found:
“[T]hat there has not been a sufficient showing of diligence on the part of the defendant and of a meritorious defense on the part of the defendant, and that the motion should therefore be overruled, . . . .”
The declaration of O. T. Hill and B. N. Knox, Jr., prepared and signed by B. N. Knox, Jr., Attorney, alleged that they orally leased 400 acres of land in Union County, to the defendant for the year 1972 for “standing rent of $4,000.00.” The declaration referred to a memorandum prepared by defendant Willard. The memorandum said:
“I James L. Willard agree to pay $4,0000 Dollars, for crop land
the govment pay will go own Bill.
and the first come off place goes own Rent, till the Rent is paid.
James L. Willard” [jtc].
The plaintiffs received a total of $1,903.-67 from government programs, which they applied on the rent leaving a balance of $2,096.33 unpaid.
The declaration of T. J. Hill, prepared and signed by B. N. Knox, Jr., Attorney, alleged that he had orally leased to the defendant 35 acres of crop land for 1972 for a total rent of $425, being at the rate of $25 per acre for 17 acres of feed grain lands.
Summons was issued in each case returnable before the circuit court on July 23, 1973, the first day of the July term, and personally served on defendant June 21, 1973.
Defendant did not employ an attorney but came personally to the court and was present in the courtroom all day July 23 and July 24, 1973. While defendant was present in the courtroom, on written motion of B. N. Knox, Jr. for judgment by default, the following judgment was rendered :
“The motion of plaintiffs for judgment by default having been sustained, it is therefore:
“Ordered and Adjudged that the plaintiffs, O. T. Hill and B. N. Knox Jr. do have and recover judgment against the defendant, James L. Willard, in the *437 amount of $2,096.33, together with all costs herein and legal interest from date, for all of which let execution issue. ■
“Ordered and Adjudged this 24th day of July, 1973.”
A similar default judgment was taken in the T. J. Hill case for $425.
On July 31, 1973, while the July term of court was still in session, Willard filed a motion to set aside default judgments. His attorney, Charles A. Neale, attached his affidavit to the motion, which said, among other things:
“The affiant further states that defendant, acting on misunderstanding of what was due by him, did appear at the July, 1973 term of said Circuit Court of Union County, Mississippi, and was present on the first and second days thereof. Defendant expected to tell his own story about the case, that is, he expected to represent himself. He did not understand that written pleadings were required. His name and case were not called and he was not aware that his case had been heard and disposed of until after judgment was entered. Immediately upon finding this had happened he sought legal assistance. Defendant acted with diligence in seeking counsel, soliciting attorneys in Union County and even going to Ashland, Mississippi for help.
“Affiant was employed to represent defendant at approximately 1:30 p. m. on this date.
“The affiant avers that he has a good and meritorious defense to said cause, and he submits in support hereof his answer in this cause this day filed. The affiant charges that the default of the said defendant was not due to negligence on defendant’s part, and that the same was not due to a lack of regard for the Circuit Court of Union County, Mississippi, on his part, but that the same was due to his honest misunderstanding as to what was needed to make response to said process. Affiant further shows that the July, 1973 term of the Circuit Court of Union County, Mississippi, is still in session, and that the defendant is willing and ready immediately to proceed to trial in the cause, if the court shall allow and accept the answer of this defendant, so that the plaintiff shall not be delayed of his trial.
“This motion is not made for delay, but that justice may be done.” (Emphasis added).
The answer referred to in the affidavit, which answer was contemporaneously filed with the motion and affidavit on July 31, 1973, stated:
“Defendant admits plaintiffs own the said land but denies there -was any agreement for standing rent or fixed rent in the amount of $4,000.00 or in any amount. Defendant admits the agreement was oral and that it was the agreement of the parties that defendant was to pay a rent of $4,000.00, less credit for government payments and contingent upon the crop harvest, that is that plaintiffs would receive the first proceeds of the crop up to the balance of $4,000.00 and defendant would receive the remainder of the crop. There was no agreement to pay other than from crop proceeds. Defendant would show that due to no fault of his there was a total crop failure on this land.” (Emphasis added).
The court term was closed on July 31, 1973, the 8th day of a statutory 12-day term. Before the term was closed, the circuit court entered this order:
“Defendant having applied to the Court in term time to have the default judgment against him set aside and to allow him to answer the Court takes said matter out for vacation hearing on a date, time and place to be designated by the Court.”
A memorandum brief was filed by the defendant with the circuit court on January 8, 1974, 20 days before the January, 1974, term of court was scheduled to con *438 vene on January 28, 1974. The defendant outlined in his memorandum brief his frantic attempts to secure legal counsel:
“Prior to the default judgments taken against him, defendant had made a number of futile attempts to obtain legal assistance. The defendant sought the assistance of North Mississippi Rural Legal Services in Holly Springs. While Mr. John J. Brothers of that office conferred with defendant, his case was not accepted. ‘Exhibit A’ and ‘Exhibit B’ and defendant was referred to a private attorney, Mr. James O. Ford of Tupelo. Mr. Ford also consulted with defendant ‘Exhibit C’ but took no affirmative action pertaining to his defense other than to call the Oxford office of North Mississippi Rural Legal Services. Mr. Stanley L. Taylor of that office ‘Exhibit D’, because of prior committments was unable to accept defendant’s case. Defendant then sought to enlist the services of Mr. William R. Lamb of Oxford. Mr. Lamb made some telephone calls on defendant’s behalf, ‘Exhibit E’ but he too was unable to assist defendant. Defendant then sought to employ Miss Peggy Jones of Ashland, ‘Exhibit F’ who referred defendant to this firm on July 24, 1973.
“This firm accepted defendant’s case on July 31, 1973, when it became apparent that defendant would not be able to obtain any other legal aid.”
On January 28, 1974, the opening day of the term, approximately one hour before oral arguments on the motion to set aside were to be heard, appellees O. T. Hill, B. N. Knox, Jr., and T. J. Hill, filed a memorandum brief dealing solely with the issue of the jurisdiction of. the court. After oral arguments were heard, the court was of the opinion that Willard’s motion to set aside default judgments should be denied “not on the jurisdictional issue but on the discretion of the Court in regard to defendant’s diligence in protecting his right and seeking to employ counsel.”
On January. 29, 1974, the court heard the testimony of defendant Willard that the “war got” him while he was in the eighth grade; that he had gone to seven lawyers in seeking legal counsel, that the first he went to was Mr. Farese, who turned him down because he was going on vacation.
Miss Lela Garrison, circuit clerk of Union county, testified that she had written and given to defendant Willard the following note:
“Mr. Farese, a default judgment was entered this morning on these 2 cases but you can make a motion to set aside this judgment — so says the Judge — but it will have to be done before this court term is over.
Lela Garrison”
She stated that it was addressed to Mr. Farese because Willard “had made the statement he was going to see him and wanted to know what to tell him.”
In Alexander v. Hyland, 208 Miss. 890, 45 So.2d 739 (1950), the Chancery Court of Warren County refused to set aside a decree pro confesso and final decree. This Court, in reversing and remanding the case for a trial on the merits, said :
“The attitude of this Court has always been favorable to trials on the merits, subject, however, to certain limitations. We have, also, in some early cases been quite strict in requiring a motion of the kind involved here, to be accompanied by the answer of the defendant, or a showing why it could be done, and a prayer for further time. .

“ ‘But when the neglect is in the mere conduct of a suit, and its consequences do not operate injuriously, its condonation by the judge can do no harm except to deprive the adverse party of an advantage which he has secured in virtue of such neglect, and in that case the party guilty of the neglect should not on that account alone be deprived of the *439 means and opportunity of maintaining or defending his rights. The object of the institution of courts is to administer justice according to law, and lawsuits are allowed for that purpose alone. Rules of procedure regulating the conducting of business in courts are instituted solely to facilitate these ends. They are necessary, and their due observance should be enforced by the courts. But it should not be forgotten that they are aids to secure the administering of justice, not shackles to bind courts to the perpetration of wrong. When their nonobservance is in a trivial matter, working no injury to the adverse party and not materially impeding the due progress of the cause, the fault should be corrected, and the authority of the court maintained rather by the imposition of costs and the use of other disciplinary agencies than by depriving parties of the opportunity of a fair trial, to secure which such rules are instituted.
“ ‘It is true that diligence is to be encouraged and the want of it discountenanced, but these ends should never be attained by transferring to one suitor the estate of another, if there be other means of securing them. Nor should a lawsuit be allowed to become a mere game of skill and address, to secure to the successful litigant the fruits of his superior management.’ ”
208 Miss. at 894-96, 45 So.2d at 740-41.
In Alexander the Court also laid down a guide for the future in these words :
“However, it must be conceded that the preponderance of our decisions is to the effect that there must be more than an allegation of a meritorious defense,— there must be a showing of what that defense will be, for the consideration of the chancellor. So, as a guide for the future, and in order to harmonize our somewhat conflicting pronouncements on the subject of procedure in this behalf, we now lay down the rule to be that on a motion to set aside a decree pro con-fesso the affidavit and motion must set out not only that the defendant has a meritorious defense, but also sufficient details thereof so as to enable the judge to determine its meritoriousness vel non.”
208 Miss. at 899, 45 So.2d at 742.
The Court then closed out its opinion in Alexander by ruling:
“On the merits of the motion, we are convinced that the chancellor should have set aside the decree, and permitted appellant to answer, and continued the case until the next term of court, in order that the case be tried on its merits.”
208 Miss. at 899, 45 So.2d at 742-43.
In the case at bar, it is perfectly clear from the record that the defendant (a farmer all of his life and of very limited education) did all that he knew to do in his defense. He personally attended court all day on the first and second days of the July, 1973, term in response to the summons served on him. His name and case were not called, according to his attorney’s uncontradicted affidavit, and when he found out what was going on and that default judgments had been entered against him, he immediately sought counsel all over Union County and even in Ashland and Tupelo.
Both in his answer contemporaneously filed on July 31, 1973, with the motion to set aside and the affidavit, and in his direct testimony given on January 29, 1974, he stated the facts of his defense, which were that the lease contracts were oral, that he understood that it was a sharecropping contract where the plaintiffs O. T. Hill and B. N. Knox, Jr. would receive government payments to apply on the rent and that the remainder of the rent was contingent upon the crop harvest, and that the plaintiffs would receive the first proceeds of the crop until the rent was fully paid, and defendant would receive what was left. Willard, as a farmer and sharecropper all of his life, alleged in his answer “There was no agreement to pay other than from crop proceeds.”
*440 We are of the opinion that justice requires that the defendant should have his day in court to present his defense, and that the circuit court was in error in finding that “there has not been a sufficient showing of diligence on the part of the defendant and of a meritorious defense . . . .”, and in refusing to set aside the default judgments.
The order of the lower court is reversed and this cause remanded for a trial on the merits.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH, SUGG and WALKER, JJ., concur.